# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ILCO SITE REMEDIATION
GROUP,

        Plaintiff,

v.

TARACORP, INC. and NK
HOLDINGS, LLC,

        Defendants.

1:12-cv-00238-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Voluntarily Dismiss Counts 1, 2, and 3 of Plaintiff's Complaint (the "Voluntary Dismissal Motion") [94] and Plaintiff's Motion for Entry of Judgment [95].

## I.  BACKGROUND

Plaintiff is an unincorporated association of twenty-three (23) companies that are potentially responsible parties ("PRPs") for the costs of remediation and removal of environmentally hazardous substances at a Superfund Site in Leeds, Alabama, and related disposal locations (the "Site"). Defendant NK Holdings,

LLC[1] is a PRP for the Site and used to be a member of the ILCO Group until it was removed for refusing to pay its clean-up allocation.

The PRPs entered into an agreement regarding clean up of the site after first entering into a Consent Order with the United States Environmental Protection Agency ("EPA") (the "Consent Order") in the action the EPA filed under Sections 101 and 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") for reimbursement of costs incurred for environmental response actions taken at the Site.  The agreement was entered into in October 1997, and was titled "The ILCO Site Remediation Agreement" ("Agreement").  Defendant's Chief Financial Officer signed the Agreement on Defendant's behalf.  The Agreement sets forth procedures for performing the Remedial Design/Remedial Action ("Remedial Work Plan") to which the PRPs agreed in the Consent Order.  The Agreement also allocated among the PRPs, the costs associated with the Remedial Work Plan.  For about ten years, Defendant paid the *pro rata* amount assessed against it under the Agreement.  During this decade long period, Defendant did not object to its obligation to pay the assessments, the nature of the amount assessed or the allocation of its share of responsibility for the Remedial Work Plan.

---

[1] NK Holdings LLC is successor to Taracorp, Inc.

That changed. On December 22, 2008, Louis J. Taratoot, the owner of NK Holdings LLC, wrote a letter to Plaintiff's counsel in which he discussed the allocations his company owed:

> I have delayed responding to you in the hopes that [NK Holdings LLC] would be able to pay its $30,199.28 assessment by the end of the year. Unfortunately, with the current state of the economy, [NK Holdings LLC] simply does not have sufficient cash flow to pay even a portion of the assessment at this time.
>
> Please be assured, however, that [NK Holdings LLC] wishes to continue to participate in the [ILCO Group] but must request that the payment of this assessment be deferred until such time as [NK Holdings LLC] has sufficient cash to pay the assessment in whole or in installments.

Defendant failed to send any of its further allocations, which led to this litigation when, on January 24, 2012, Plaintiff filed its complaint.[2] The Complaint contained six counts all centered on Defendant's refusal to pay its share of remedial expenses to which it agreed under the Consent Order and Agreement. The Complaint sought cost recovery and contribution pursuant to CERCLA, a declaratory judgment against Defendant for its liability to pay existing and future costs associated with the Remedial Work Plan, breach of contract damages in excess of $119,699.18, and attorneys fees.

---

[2] On July 14, 2011, Plaintiff declared Defendant in default under the Agreement. On September 7, 2011, Plaintiff removed Defendant from the ILCO Group because of Defendant's continued failure to pay its share of the Remedial Work Plan costs allocated to Defendant under the Consent Decree and the Agreement.

3

On August 7, 2013, Plaintiff moved for partial summary judgment on its breach of contract claim, seeking damages, then in the amount of $267,480.36, plus interest for unpaid assessments owed from December 2008 through 2013, and a declaration that Defendant is responsible for paying its share of all future amounts assessed pursuant to the Agreement.[3] On November 18, 2013, Defendant finally replied to Plaintiff's Partial Motion for Summary Judgment.[4]

On November 25, 2013, Defendant moved for summary judgment on the Plaintiff's CERCLA claim and itself sought summary judgment on Plaintiff's breach of contract claim. Recognizing that the Parties' dispute centered on Defendant's contract obligation and in an effort to focus the litigation on the breach of contract dispute, the Court, on April 16, 2014, convened a telephone conference to discuss the pending motions and the status of the case. During the conference, the Court observed that because the Parties had filed competing motions for summary judgment on Plaintiff's breach of contract claim, a decision on the contract dispute issues might resolve the litigation. The Court suggested the parties focus on the breach of contract claim and suggested withholding further briefing on Defendant's motion for summary judgment on Plaintiff's claim under

---

[3] The Court believed then and now that Plaintiff's breach of contract claim was the principal area of dispute between the parties.
[4] The delay in Defendant's response was allowed by the Court at the request of Defendant's counsel who was suffering from a significant medical condition.

4

CERCLA.

A consensus thus was reached during the April 16, 2014, telephone conference to focus all summary judgment briefing on Plaintiff's breach of contract claim:

> Court: . . . I know there are CERCLA claims, which I think is the underlying basis by which the contract was entered into, that a decision on the contract dispute, which simply is the mechanism by which the parties agreed to meet their CERCLA consent decree obligations that the parties will have a full idea of what their obligations are, which is why I think it makes sense to first deal with the breach of contract issue.

The Court noted that if the Court's decision on the breach of contract claim did not resolve the action, the Court would require Plaintiff to respond to Defendant's summary judgment motion on Plaintiff's CERCLA claims within thirty (30) days of the Court's ruling on Plaintiff's Motion for Partial Summary Judgment. Counsel for the Defendant, when presented with this reasoning and plan to focus on the breach of contract claim and defer the motion on the CERCLA claims stated: "[w]e agree, Your Honor."[5]

---

[5] The Court summarized this agreement again in its July 10, 2014 Order on Plaintiff's Partial Motion for Summary Judgment by stating in Footnote 8 of the Order:
> The Court did not consider Defendant's Motion for Summary Judgment on Plaintiff's claims under CERCLA because it relieved the parties from fully briefing this claim during the Court's April 16, 2014, telephone conference. Plaintiff shall advise the Court promptly whether it intends to pursue its

5

On July 10, 2014, (the "July 10th Order") the Court entered its Order granting Plaintiff's Motion for Partial Summary Judgment on its breach of contract claim finding that Defendant is liable under the Agreement for its apportioned share of the remediation expenses. Plaintiff thereafter notified the Court that it did not intend to pursue its CERCLA claims and filed its Voluntary Dismissal Motion to dismiss without prejudice the remaining claims in the Complaint.[6] Plaintiff also moved for entry of a judgment based on the July 10th Order.

Defendant opposes the Voluntary Dismissal Motion on the grounds that if the remaining claims are dismissed they should be with prejudice or be conditioned on the payment of Defendant's attorney's fees and costs incurred to litigate these claims. If the claims are allowed to be dismissed without prejudice, Defendant requests that conditions be placed on refiling.[7]

---

CERCLA claim. If it does, the Court will require the parties to complete their briefing on Defendant's Motion for Summary Judgment on the CERCLA claim. [93], n. 8
By filing this Voluntary Dismissal Motion, Plaintiff confirms its decision not to pursue its CERCLA and other claims.
[6] Plaintiff sought a litigating advantage by proposing to Defendant to dismiss the remaining claims on the condition that Defendant agree not to appeal the Court's July 10th Order. This discredits its self-serving argument that its Voluntary Dismissal Motion is simply to further its decision to seek any relief granted on its breach of contract claim and, if successful, to forego litigation of its other claims.
[7] Because Defendant submits that the remaining claims not be allowed to be dismissed unless its requested conditions are met, Defendant argues the Court should deny Plaintiff's motion for entry of judgment.

## II. DISCUSSION

### A. Motion to Dismiss

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that after an answer or motion for summary judgment has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Unless otherwise specified in the order, a dismissal under Rule 41(a)(2) is without prejudice. Id.

Our Circuit gives district courts broad discretion to determine whether to allow a voluntary dismissal under Rule 41(a)(2), although in most instances a dismissal without prejudice should be granted "unless the defendant will suffer clear legal prejudice, *other [than] the mere prospect of a subsequent lawsuit*, as a result." Pontenberg v. Boston Scientific Corp., 252 F.3d 1253, 1255 (11th Cir. 2001) (quoting McCants v. Ford Motor Co., Inc., 781 F.2d 855, 856-57 (11th Cir. 1986)). "In exercising its broad equitable discretion under Rule 41(a)(2), the district court must weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." Id. (internal quotation omitted).

The purpose of Rule 41(a)(2) is to preclude voluntary dismissals that inequitably affect the opposing party, and to allow the implementation of curative

conditions by the court. Farmaceutisk Laboratorium Ferring A/S v. Reid Rowell, Inc., 142 F.R.D. 179, 181 (N.D. Ga. 1991) (citing McCants, 781 F.2d at 856). "[W]hen exercising its discretion in considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of the defendants." Fisher v. Puerto Rico Marine Mgmt., Inc., 940 F.2d 1502, 1503 (11th Cir. 1991). For Rule 41(a)(2) purposes, the plaintiff's interest in dismissal is "of little concern." Farmaceutisk, 142 F.R.D. at 181 (citing LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976)).

"[T]he prospect of a second lawsuit on the same set of facts" is not sufficient legal prejudice to the defendant to justify denying a plaintiff's motion to dismiss without prejudice. See McCants, 781 F.2d at 859; Durham, 385 F.2d at 368. "Delay alone, in the absence of bad faith, is insufficient to justify a dismissal with prejudice, even where a fully briefed summary judgment motion is pending." 252 F.3d at 1259.

"The Eleventh Circuit has not explicitly adopted a list of factors that a trial court should consider when determining whether a defendant would suffer 'plain prejudice' versus 'the mere prospect of a second lawsuit,'" in deciding if dismissal without prejudice is appropriate. Mosley v. JLG Indus. Inc., No. 7:03-cv-119HL, 2005 WL 2293567, at *3 (M.D. Ga. Sept. 20, 2005), aff'd, 189 F. App'x 874 (11th

Cir. 2006). The Mosley court noted, however, that the cases in our circuit "have hinged on various factors as the courts sought 'to weigh the relevant equities and do justice between the parties.'" Id. (quoting Stephens v. Ga. Dept. of Transp., 134 F. App'x 320, 323 (11th Cir. 2005)). That is, substantial discretion is vested in the district court to evaluate what is a just resolution. As the Eleventh Circuit explains: "[t]he crucial question to be determined is, Would the defendant lose any substantial right by the dismissal[?]" Pontenberg, 252 F.3d at 1255 (quoting Durham v. Fla. E. Coast Ry. Co., 385 F.2d 366, 368 (5th Cir. 1967)).[8]

If a court grants a dismissal without prejudice under Rule 41(a)(2), it possesses broad discretion to determine what terms and conditions, if any, should be imposed as a condition for dismissal. McCants, 781 F.2d at 857; Farmaceutisk, 142 F.R.D. at 181. Plaintiffs usually are not allowed to dismiss an action without prejudice under Rule 41(a)(2) "after the defendant has been put to considerable

---

[8] When courts in our Circuit have denied a plaintiff's Rule 41(a)(2) motion for dismissal without prejudice, several factors were frequently important to the decision. These factors include the length of time and amount of resources spent by the defendant litigating the case, dilatory tactics by the plaintiff, an insufficient explanation of the need for dismissal by the plaintiff, and whether the defendant had a motion for summary judgment pending when the dismissal was requested. See In re Bayshore Ford Trucks Sales, Inc., 471 F.3d 1233, 1259 (11th Cir 2006); Stephens, 134 F. App'x at 323; Fisher, 940 F.2d at 1503; Mosley, 2005 WL 2293567, at *3 n.1; McBride v. JLG Indus., Inc., No. 7:03 CV 118 HL, 2005 WL 2293566, at *3-*4 (M.D. Ga. Sept. 20, 2005).

9

expense in preparing for trial except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation." McCants, 781 F.2d at 860. The Eleventh Circuit has stated that a district court may require a plaintiff to pay "all litigation-related expenses incurred by the defendant, including reasonable attorneys' fees." Id.; see also Roberts Enters., Inc. v. Olympia Sales, Inc., 186 F. App'x 871, 871 (11th Cir. 2006); Versa Prods., Inc. v. Home Depot, USA, Inc., 387 F.3d 1325, 1328 (11th Cir. 2004); Ortega Trujillo v. Banco Central Del Ecuador, 379 F.3d 1298, 1300 (11th Cir. 2004); McGregor v. Bd. of Comm'rs of Palm Beach Cnty., 956 F.2d 1017, 1021 (11th Cir. 1992). A district court may also require a plaintiff seeking dismissal under Rule 41(a)(2) to re-file a future complaint in the same venue to "preserve, upon refiling, the *status quo ante*." See Versa Prods., Inc., 387 F.3d at 1329.

Plaintiff now seeks to voluntarily dismiss Counts 1, 2 and 3 of the Complaint without prejudice.[9] The motion is consistent with the consensus

---

[9] Courts uniformly have held that Rule 41(a) does not permit the dismissal of individual claims from a multi-claim action but only authorizes the dismissal of an entire action. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413–14 & n.13 (3d ed. 2008 & Supp. 2012) (collecting cases) ("Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action."); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) (holding that a district court is "not empowered to dismiss only certain claims under Rule 41"); Exxon Corp. v. Md. Cas. Co., 599 F.2d 659, 662 (5th Cir. 1979) (holding that Rule 41(a) allows the dismissal of an "action," not "the

10

reached by the parties in their April 16, 2014, conference with the Court in which the parties agreed that Plaintiff's breach of contract claim was the central claim in this litigation and, if decided favorably for Plaintiff, would provide Plaintiff the relief it requests, render the remainder of Plaintiff's claims unnecessary, save all of the litigants time and expense in the litigation process, and essentially resolve the case. That is, the principal relief sought by Plaintiff in this case was a ruling that Defendant had breached the Agreement by failing to meet its obligation under the Agreement to make remediation payments, that past due payments were not made, and that Defendant be required to meet its obligation to make payments in the future. This breach of contract issue is the one on which the parties agreed to focus, the issue they litigated in their competing summary judgment motions, and the issue which was decided in the July 10th Order. This focused approach agreed upon by the parties saved the parties effort and expense including by eliminating two rounds of briefs on Defendant's motion for summary judgment on Plaintiff's

---

separate claims which make up an action"). As many authorities have explained, the proper way for a plaintiff to remove a single claim is to move to amend the complaint under Rule 15. <u>See, e.g.</u>, 9 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 2362, at 413–14 (3d ed. 2008). This less than all of the action rule does not apply here because Plaintiff is seeking to dismiss all of the claims upon which the Court has not granted summary judgment. Thus Plaintiff seeks dismissal of the entire remnant of this action.

CERCLA claims. The focused approach taken significantly preserved judicial resources.

Defendant is not prejudiced by allowing Plaintiff to dismiss its remaining claims without prejudice. The time and expense Defendant incurred in this case resulted from its litigating position that it was not obligated to make the remedial expense payments required of it by the Consent Order and Agreement. That is, Defendant incurred the time and expense in this litigation because it disputed that it had breached the Agreement, an argument rejected in the Court's July 10th Order. By allowing now the dismissal of Plaintiff's remaining claims, Defendant incurs a significant time and expense benefit. The dismissal of Counts 1, 2 and 3 do not affect any substantial right of the Defendant. To the extent Defendant incurred fees and expenses in this action it was to litigate the central breach of contract claim on which it ultimately did not prevail. In weighing the equities of this matter to determine a just result, the Court concludes that Counts 1, 2 and 3 should be allowed to be dismissed without prejudice. Farmaceutisk, 142 F.R.D. at 181; Stephens, 134 F. App'x at 323.

The Court also determines, based on the record in this case, that fairness does not require Plaintiff to pay to Defendant any litigation expense, attorneys fees or costs. Defendant's litigation effort and expense was incurred because of the

litigation strategy it employed. An award of fees and costs as a requirement of dismissal is not in order here.

Finally, the Court considers what conditions, if any, should be imposed upon the refilling of any of the claims allowed to be dismissed. The Court concludes that should one or more of the claims allowed to be dismissed are refiled, all of the discovery in this case shall be deemed to have been conducted in the refiled case and available to any party named in the litigation. For these reasons, the parties should maintain all written, deposition and document discovery in a place of safekeeping so it is available if any of the dismissed claims are re-asserted.[10] Plaintiff also shall seek the Court's pre-approval to refile any dismissed claim. Any refiling of claims shall be in this Court, provided there is a basis for subject matter jurisdiction over the claim or claims to be refiled.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Voluntarily Dismiss Counts 1, 2 and 3 of Plaintiff's Complaint is **GRANTED**, and Counts 1, 2 and 3 are dismissed without prejudice.

---

[10] The parties may agree, in writing, to dispose of the information required to be maintained by this Order. Any such agreement shall be filed in this action in a pleading entitled "Agreed Disposition of Discovery."

**IT IS FURTHER ORDERED** that the parties shall preserve all of the discovery produced and served in this action so it is available to the parties for use in the event one or more of the claims dismissed here are refiled.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Plaintiff and against Defendant in the amount of $267,480.36, plus interest, for unpaid assessment owed by Defendant, and Defendant is ordered to pay any further assessments for which it is responsible and which are billed pursuant to the Agreement, provided however, that Defendant may assert any defense to the payment of such assessment other than those resolved by the Court's July 10, 2014, Opinion and Order in this action.

**SO ORDERED** this 1st day of October, 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE